**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALIREZA VAZIRABADI,

    Plaintiff - Appellant,

v.

DENVER PUBLIC SCHOOLS; JOHN
AND JANE DOES 1 THROUGH 10;
JOHN AND JANE DOE
CORPORATIONS 1 THROUGH 10;
OTHER JOHN AND JANE DOE
ENTITIES 1 THROUGH 10, all whose
true names are unknown,

    Defendants - Appellees.

No. 19-1245
(D.C. No. 1:17-CV-01194-WJM-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **HARTZ**, Circuit Judges.
_____

Alireza Vazirabadi, appearing pro se,[1] brought this employment discrimination

action against Denver Public Schools ("DPS"), alleging that he was not hired for a

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Vazirabadi appears pro se, we construe his filings liberally, but we
do not "assume the role of advocate" for Vazirabadi. Garrett v. Selby Connor

position as a Process Improvement Engineer ("PIE") because of his national origin and age. Vazirabadi appeals the district court's order granting DPS's Motion for Summary Judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Vazirabadi is an Iranian American man in his mid-fifties. In 2015, Vazirabadi saw a job posting online—DPS was seeking applicants for two Process Improvement Engineer ("PIE") positions. A qualified candidate needed an engineering degree and at least five years of relevant experience. DPS also sought candidates with strong collaborative leadership skills. Vazirabadi has a bachelor's degree in Industrial Engineering and, as of 2015, he had over 20 years of relevant experience. He applied for the position through DPS's online job application system. In 2015, the application asked candidates if they were bilingual and, if so, in what languages (the "bilingual question"). Vazirabadi indicated that he is bilingual in Farsi/Persian. Vazirabadi did not report his bilingualism on any other materials or at any other stage in the interview process, nor was he asked about this at any time. Vazirabadi did not report his age or national origin at any point in the interview process.

Vazirabadi was selected for a phone interview. He and four other candidates were then invited to undergo in-person interviews. The first component of the in-person interview process was a panel interview with the hiring manager and three incumbent PIEs. The panel asked each applicant to facilitate a group discussion

Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

2

about team-building activities in Denver. Vazirabadi's account of his performance differs from his interviewers' account. Vazirabadi asserts that he facilitated a collaborative discussion and that he maintained "excellent interactions and chemistry with all the panel members, for the entire 60 minute interview." (Doc. 117 at 13) At the end of the interview, one of the interviewers asked Vazirabadi if he prefers to be called "Alireza" or "Ali." (Id.) Vazirabadi took this a sign that he would certainly be offered the position. In contrast, DPS maintains that Vazirabadi dominated the conversation and failed to engage all members of the panel in the conversation.

After DPS had interviewed all five candidates, the interviewers met to compare notes and rank the candidates on a scale of one through five, one being the most desirable. The ranking order was unanimous; each interviewer agreed that Vazirabadi was the least desirable candidate and he was therefore ranked fifth. The hiring manager created a spreadsheet to reflect that ranking and included a comment about Vazirabadi: "Good experience, not a good team fit. Not sure if he would work well on a team." (Doc. 116-1 at 30) DPS extended offers to the candidates ranked first and second, and both candidates accepted. The hiring manager then emailed Vazirabadi to inform him that DPS had decided to hire other candidates.

Vazirabadi alleged that the email left him feeling "emotionally and physically sick, numb, humiliated and rejected" because he was "100% sure" he had "perfect" qualifications and had "performed great" in his interview. (Doc. 67 at 8, ¶ 27)

Vazirabadi filed a charge of discrimination with the EEOC and subsequently received a Notice of Right to Sue. Vazirabadi filed a complaint against DPS in May

3

2017. Vazirabadi amended his complaint once as a matter of course, and he later received leave from the court to file a second amended complaint. In his operative Second Amended Complaint, Vazirabadi asserts that DPS engaged in national origin discrimination in violation of Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. In May 2018, the magistrate judge held a scheduling conference and set deadlines to guide the proceedings. The magistrate judge set a deadline of June 30, 2018 as the last day to add parties or amend pleadings.

In September 2018, Vazirabadi served a subpoena to produce on non-party Infor Global Solutions ("Infor"). Infor is a software company that licenses online job application software to DPS. Vazirabadi sought information from Infor about its development of the bilingual question for DPS's job application software. Infor refused to produce the requested information, and Vazirabadi filed a motion to compel. The magistrate judge denied the motion, concluding that Vazirabadi had failed to demonstrate how the information he sought from Infor was relevant to his claims against DPS. Vazirabadi filed an objection to the magistrate judge's ruling.

On November 30, 2018—five months after the June 30, 2018 deadline for amending pleadings—Vazirabadi filed a motion to amend his Second Amended Complaint. On February 8, 2019, while the November 30, 2018 motion was still pending before the court, Vazirabadi filed another motion to amend his Second Amended Complaint. Through those motions, Vazirabadi sought to add claims for

4

conspiracy between DPS and Infor. The magistrate judge recommended denying those motions, and Vazirabadi filed an objection to that recommendation.

On January 14, 2019, DPS moved for summary judgment, and the magistrate judge recommended granting that motion. Vazirabadi filed an objection to that recommendation.

On June 25, 2019, the district court issued its Order on Pending Recommendations and Motions. First, the court adopted the magistrate judge's recommendation regarding Vazirabadi's motions to amend, overruled Vazirabadi's objection to that recommendation, and denied Vazirabadi's November 30, 2018 Motion to Amend and his February 8, 2019 Motion to Amend. Second, the court adopted the magistrate judge's recommendation regarding DPS's Motion for Summary Judgment, overruled Vazirabadi's objection to that recommendation, and granted DPS's Motion for Summary Judgment. Third, the court overruled as moot Vazirabadi's objection to the magistrate judge's denial of Vazirabadi's motion to compel. Vazirabadi appeals each of those rulings.

## II.    DISCUSSION

**A. The district court did not err in denying Vazirabadi's motions to amend.**

We review the district court's ruling on a motion for leave to file an amended complaint for an abuse of discretion. Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185, 1195 (10th Cir. 2015). Rule 15(a)(2) provides that after the initial deadline for amendment has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court

5

should freely give leave when justice so requires." Id. However, "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc., 771 F.3d 1230, 1240 (10th Cir. 2014). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" Gorsuch, 771 F.3d at 1240 (quoting Pumpco, Inc. v. Schenker Int'l, Inc., 204 F.R.D. 667, 668 (D. Colo. 2001)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." Id. "If the plaintiff knew of the underlying conduct but simply failed to raise [applicable] claims, however, the claims are barred." Id. Courts are "afforded wide discretion" in their application of the good cause standard under Rule 16. Bylin v. Billings, 568 F.3d 1224, 1231 (10th Cir. 2009).

Vazirabadi failed to show that the June 30, 2018 deadline could not have been met despite his diligent efforts. See Gorsuch, 771 F.3d at 1240. In his November 30, 2018 Motion to Amend, Vazirabadi sought to add Infor and Infor's CEO as parties to this action. Vazirabadi learned about Infor through discovery on August 16, 2018— 106 days before he filed his first motion to amend. Vazirabadi does not offer any explanation for that delay. Vazirabadi knew of Infor's involvement but failed to raise claims against them for more than 100 days. Similarly, in his February 8, 2019

6

Motion to Amend, Vazirabadi sought to add as parties two DPS employees who were involved in interviewing and making hiring decisions for the two PIE positions. Vazirabadi knew of those employees and their involvement in interviewing and making hiring decisions from the outset of the case. Yet, after filing his initial complaint, he waited 233 days—more than eight months—before attempting to add those employees as parties to this action. Again, Vazirabadi offers no justification for that delay. Vazirabadi did not satisfy Rule 16's good cause standard. Therefore, the district court acted within its discretion in denying Vazirabadi's motions to amend, both of which were filed long after the June 30, 2018 scheduling deadline.

## B. The district court did not err in granting DPS's Motion for Summary Judgment.

"We review the district court's summary-judgment order de novo, applying the same standard that the district court is to apply." Singh v. Cordle, 936 F.3d 1022, 1037 (10th Cir. 2019). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and one party is entitled to judgment as a matter of law." Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Fed. R. Civ. P. 56(c)). "Although we construe the evidence in the light most favorable to the non-movant, to avoid summary judgment, a nonmovant must provide significantly probative evidence that would support a verdict in [his or her] favor." Jaramillo v. Adams Cty. Sch. Dist. 14, 680 F.3d 1267, 1268–69 (10th Cir. 2012).

7

Vazirabadi claims that DPS discriminated against him based on his national origin and age, in violation of Title VII and the ADEA. Because Vazirabadi offers no direct evidence of discrimination, we apply the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonell Douglas framework, "the plaintiff has the initial burden of establishing a prima facie case of discrimination." Singh, 936 F.3d at 1037. "In general, '[t]he critical prima facie inquiry . . . is whether the plaintiff has demonstrated that the adverse employment action . . . occurred under circumstances which give rise to an inference of unlawful discrimination.'" Id. (quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1227 (10th Cir. 2000)). "If the plaintiff makes this showing, the burden shifts to the employer to assert 'a legitimate nondiscriminatory reason for its actions.'" Id. (quoting Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012)). If the employer meets that burden, "the burden shifts back to the plaintiff to introduce evidence that the stated nondiscriminatory reason is merely a pretext." Id. (quoting Daniels, 701 F.3d at 627).

To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the "proffered non-discriminatory reason is unworthy of belief." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1134 (10th Cir. 2010) (quoting Pinkerton v. Colo Dep't of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009)). A plaintiff "can meet this standard by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder

8

could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Id. (quoting Pinkerton, 563 F.3d at 1065).

The district court concluded that even if Vazirabadi had made a prima facie case of national origin or age discrimination, DPS satisfied its burden of providing legitimate, non-discriminatory reasons for not hiring Vazirabadi, and Vazirabadi failed to make a showing of pretext. We agree.

DPS argues that it chose not to hire Vazirabadi because he performed poorly in his interviews. The evidence in the record supports DPS's position. Regarding Vazirabadi's performance in his panel interview, the hiring manager stated that Vazirabadi "performed poorly" because, rather than facilitating a group discussion, "he dictated it." (Doc. 116-1 at 2–3) The hiring manager also observed that Vazirabadi "was unable to make all the Process Improvement team members feel he was listening to their ideas." (Id.) One of the incumbent PIEs offered a similar account, stating that Vazirabadi "dominated the discussion rather than facilitate it." (Doc. 116-5 at 1) A supervisor described her impression that Vazirabadi "would not be able to work collaboratively and consultatively in a team role." (Doc. 116-2 at 2) In contrast, interviewers described the two candidates who were ultimately hired for the positions as demonstrating strong collaborative and listening skills. Based on his performance, all interviewers ranked Vazirabadi fifth out of five candidates. In documenting Vazirabadi's rank, the hiring manager commented: "Good experience, not a good team fit. Not sure if he would work well on a team." (Doc. 116-1 at 30)

9

Moreover, the hiring manager stated in an affidavit that, at the time she made her hiring decision, she was not aware that applicants were required to complete an online job application, and she was therefore not aware of any applicant's response to the bilingual question. She further stated that the age, national origin, and language proficiency of the candidates had no bearing on her hiring decisions.

Vazirabadi does not offer any evidence to show that DPS's proffered non-discriminatory reasons for choosing not to hire him are unworthy of belief. See Reinhardt, 595 F.3d at 1134. He offers only his own impression that he maintained "excellent interactions and chemistry with all the panel members, for the entire 60 minute interview." (Doc. 117 at 13) Vazirabadi does not present any evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would cast doubt on DPS's assertion that it chose not hire Vazirabadi because he performed poorly in his interviews and had gaps in his employment history. Reinhardt, 595 F.3d at 1134 (quoting Pinkerton, 563 F.3d at 1065). Vazirabadi has therefore failed to meet his burden under the McDonell Douglas framework, and DPS is entitled to summary judgment.[2]

---

[2] In his brief, Vazirabadi raises four specific arguments to challenge the summary judgment ruling: (1) DPS discarded the panel interview notes and thus an adverse inference should be applied against DPS to remedy the spoliation; (2) DPS interviewers submitted false affidavits, and the court failed to weigh the evidence in favor of Vazirabadi; (3) DPS's bilingual question had a disparate impact on members of a protected class; and (4) Vazirabadi, as the fifth ranked candidate, was actually the most desirable candidate. We have carefully considered each of these arguments and find them to be unpersuasive. Accordingly, we do not discuss them further.

**C. The district court did not err in overruling as moot Vazirabadi's objection regarding his Motion to Compel.**

We review discovery rulings, including a ruling that a motion is moot, for an abuse of discretion. Carr v. Castle, 337 F.3d 1221, 1232 (10th Cir. 2003). After the magistrate judge denied Vazirabadi's motion to compel discovery from Infor, Vazirabadi filed an objection to the magistrate judge's ruling. That objection was pending before the district court when DPS moved for summary judgment. "There is no requirement in Rule 56 . . . that summary judgment not be entered until discovery is complete." Marquez v. Cable One, Inc., 463 F.3d 1118, 1121 (10th Cir. 2006) (quoting Pub. Serv. Co. of Colo. v. Cont'l Cas. Co., 26 F.3d 1508, 1518 (10th Cir. 1994)). However, Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer its consideration of the motion for summary judgment or allow time to take discovery. Fed. R. Civ. P. 56(d).

Vazirabadi did not file a Rule 56(d) affidavit demonstrating why he could not respond to DPS's Motion for Summary Judgment without obtaining discovery from Infor. Moreover, even on appeal, Vazirabadi has failed to explain how documents obtained from Infor could raise a triable issue of fact as to his claims against DPS. Therefore, the district court was within its discretion in overruling Vazirabadi's objection as moot.

11

# III.    CONCLUSION

We AFFIRM the district court's rulings in its Order on Pending Recommendations and Motions.

Entered for the Court


David M. Ebel
Circuit Judge